HALFERTY v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY, *Appellant*.

1. **Railroads**: KILLING STOCK: STATUTORY SIGNALS. In order to render a railroad company liable for injury done to stock at public crossings by its engines and cars, it must be shown that its failure to ring the bell and sound the whistle concurred. Nothing short of an entire failure in both these particulars will cast liability upon the company.

2. ——— : ——— : COLLISION, EVIDENCE OF. Where there is no evidence of a collision between a railroad train and an animal alleged to have been killed by such train, there can be no recovery. But such collision need not be shown by direct testimony, but may be inferred from the facts and circumstances in evidence.

3. ——— : PUBLIC CROSSINGS: SIGNALS. It is the duty of those who handle such dangerous machinery as a railroad train, to be on the lookout, as well as to give the statutory signals, when approaching public crossings.

*Appeal from Clinton Circuit Court.*—HON. GEO. W. DUNN, Judge

AFFIRMED.

*Wells H. Blodgett* and *Geo. S. Grover* for appellant.

There was no collision proved between the train and the animal. This, of itself, should have nonsuited plaintiff. *Lafferty v. Railroad Co.*, 44 Mo. 291; *Hughes v. Railroad Co.*, 66 Mo. 325; *Seibert v. Railroad Co.*, 72 Mo. 565. There was no evidence that the engineer could have stopped the train with safety after discovering the dangerous situation of the animal. If he could not, his failure to stop the train was a prudent and not a negligent act. *Pryor v. Railroad Co.*, 69 Mo. 218; *Bell v. Railroad Co.*, 72 Mo. 50. Nor was

it shown that the failure to give the signals within eighty rods of the crossing caused the injury. Plaintiff was not, therefore, entitled to recover, and it was error to refuse defendant's instruction. *Holman v. Railroad Co.*, 62 Mo. 562; *Wallace v. Railroad Co.*, 74 Mo. 597; *Powell v. Railroad Co.*, 76 Mo. 83. The first instruction given for plaintiff was erroneous. Revised Statutes, section 806 does not require both the blowing of the whistle and the ringing of the bell. Either is sufficient. *Turner v. Railroad Co.*, 78 Mo. 578. The second instruction given for plaintiff is erroneous, as there is no evidence on which to base it. It is fatal error to assume the existence of facts not in evidence and found instructions upon them. *Washington, etc., Co. v. St. Mary's Seminary*, 52 Mo. 480; *Gerren v. Railroad Co.*, 60 Mo. 405; *Peck v. Ritchey*, 63 Mo. 114; Thompson on Charging the Jury, p. 75.

*D. H. McIntyre* and *F. M. Brown* for respondent.

The connection between defendant's default and the injury may be inferred from all the circumstances of the particular case. *Alexander v. Railroad Co.*, 76 Mo. 494. The evidence clearly made a case for the jury. The testimony was uncontradicted that the mule was strong and valuable, and in a situation and condition to get out of the way if the signals had been given. *Goodwin v. Railroad Co.*, 75 Mo. 76; *Alexander v. Railroad Co.*, 76 Mo. 494; *Turner v. Railroad Co.*, 78 Mo. 578. It was defendant's imperative duty to ring the bell and sound the whistle, and no excuse is receivable for its failure to do so. *Johnson v. Railroad Co.*, 77 Mo. 546. The first instruction given for the plaintiff is not open to the objection urged against it by appellant's counsel. It correctly declares the law. It tells the jury that it was defendant's duty to ring the bell or sound the whistle, and if they found from the evidence that it neglected to ring the bell and also neglected to sound the whistle, and further found that the mule was killed by

reason of such negligence, they should find for the plaintiff. This was in harmony with late decisions of this court. *Van Note v. Railroad Co.*, 70 Mo. 541; *Turner v. Railroad Co., supra.*

SHERWOOD, J.—Action before a justice of the peace. The material part of plaintiff's amended petition upon which the cause was tried in the circuit court is as follows:

\*     \*     \*     \*     \*     \*     \*     \*     ·\*     \*

And for cause of action states that on the 16th day of January, 1881, plaintiff's mare mule about four years old, dark colored and about sixteen hands high, and of the value of $175 (with other stock of plaintiff's), attempted to cross the track of said railroad at a point on said railroad in said Atchison township, in said county, adjoining Concord township, in said county of Clinton, and where said road crossed a traveled public road for public use and at a point where the farms of Ellen E. Scott, S. H. Scearce and S. Halferty corner or join.

·That plaintiff's said mule having attempted to cross defendant's said railroad track at said point at the time a..l place as aforesaid, was carelessly and negligently run over, struck and instantly killed by the locomotive and train of cars of the defendant, being then and there operated by defendant, its agents, servants and employes, and that the defendant, its agents, servants and employes, on said day and at the time plaintiff's said mule as aforesaid, attempted to cross defendant's said track at said place as aforesaid, carelessly and negligently failed to ring the bell placed on the locomotive of their said engine, and carelessly and negligently failed to ring the bell at a distance of eighty rods from the said crossing, and failed to keep said bell ringing until said train had crossed said crossing where they killed plaintiff's said mule, and carelessly and negligently failed to sound the steam whistle attached to their said engine eighty rods from the place where the said road crosses said traveled public road, and negligently failed to sound their

steam whistle at intervals until they had crossed said public road at the time and place as aforesaid, and in violation and contrary to the provisions of the statutes in such cases made and provided, and negligently failed to check the speed of their said locomotive and train, but, on the contrary, willfully let on more steam and increased the speed of their said train when within a few feet of said public crossing, and while in full view of plaintiff's said mule while attempting to cross their said track.

Wherefore, he alleges he is damaged in the sum of $175. Wherefore he prays judgment for the said sum of $175, and for all other proper relief in the premises and costs of suit.

The entire evidence in the cause was as follows. The plaintiff testified:

"Am the plaintiff in the case and owner of the mule. On January 16th, 1881, I missed my mule; next morning found her at the railroad crossing on the public highway west of and adjoining my farm. She was dead, lying on the north side of the railroad in the public highway and near the east side.

There was a willow tree north of the track and on east line of the highway. The mule was north of this sapling; its back against it. There was snow on the ground and no tracks between where the mule lay and the railroad track. Had seven head of stock out; the old mare was leader of stock and mules. She was afraid of bell and whistle and when either is sounded she will run away as far as she can and as quickly as possible. The other stock were in the habit of following her. Mule was worth $175. The railroad runs through a cut on a curve west of crossing; the back bone of the cut is about seventy yards west of crossing; it is a little down grade at the crossing. The person in charge of train could have seen stock crossing seventy or eighty yards away."

Examination by court: On left hind leg of mule was

a mark near hoof about the size of a half-dollar where skin was off; no other bruise or mark of injury or violence.

M. Conner testified he was about forty or fifty yards from the crossing when the train came up; was paying particular attention to the train as I had a pair of young mules and was afraid they would be frightened. They did not sound their whistle that I heard, but rung or tapped the bell three or four times about twenty-five yards from the crossing. The mule was lying about twenty feet from the track near a willow tree; no marks of injury or violence on the mule except a place about the size of a half-dollar on the left hind leg near the hoof the hair was off. The train was from ten to fourteen cars and was going east. Can see crossing about 130 or 140 yards west of crossing. The stock was south of crossing about twenty-five yards when I saw them and were going north toward the crossing. Mare was crossing the track when bell was sounded. She got away. No tracks between railroad track and where the mule lay; the animal near the foot where the hair was off was bleeding a little.

Wm. Lott testified: Saw mule after it was killed; saw train January 16th, 1881, about two hundred and fifty yards west of crossing; was watching train. It did not whistle; don't know whether bell was rung or not; I did not hear it. No bruises or wounds on mule except hair off on left hind leg near hoof.

Admitted that mule was worth $175, and that the mare became frightened at sound of bell or whistle and was leader of the stock.

This was all the evidence offered by plaintiff.

Wm. Martin, on defendant's behalf, testified: Am locomotive engineer; am in employ of defendant; nine years' experience; was engineer on locomotive January 16, 1881, on Wabash, St. Louis & Pacific Railway, attached to a freight train going east; saw a lot of horses and mules south of crossing; they attempted to cross the track; all got across but one; it seemed to study what it would do and

finally went across; it jumped and fell on its side on north side of the crossing; engine did not strike the mule nor did any part of the train strike it. We had been ringing the bell for more than eighty rods before we came to the crossing; the bell was rung by a brakeman; the whistle was sounded before we crossed the highway; if the engine or any part of the train had struck the mule it would have been thrown forward and in the direction the train was moving and would have left wounds or broken bones on the mule.

M. St. Clair testified: Was fireman on engine of defendant pulling freight train going east on January 16, 1881. Did not see the mule until it was across the track; engine did not strike the mule nor did any part of the train; he ran against a tree on the north side of the track and fell; the bell was rung and continued ringing for eighty rods up to and over the crossing; if the train or engine had struck the mule it would have thrown it forward and left wounds and bruises on its body.

Cross-examination: We whistle for stock; the mule was on its feet when I saw him between the track and the tree; was going between a trot and a gallop. Engine was on the crossing when I saw the mule; I know the bell was rung because it was our instructions so to do, as well as our custom at all crossings.

M. O'Conner testified: Am section foreman. Examined the mule; it had no bruises or wounds except a little hair near its left hind foot; turned him over and examined him carefully; he was lying in the public highway north of the crossing.

Joseph Allabaugh testified the same. This was all the evidence.

The court gave the following instructions at the request of plaintiff, and against the objections of defendant.

1. It was the duty of the servants and employes of defendant in charge of the locomotive and train, to cause the bell on the locomotive to be rung at a distance of at least eighty rods before reaching the crossing where the mule was

killed, and to keep said bell ringing until the train had reached the crossing; or to cause the steam whistle to be sounded at least eighty rods from said crossing, and cause it to be sounded at intervals until the locomotive reached said crossing; and if the jury are satisfied by the evidence that defendant's servants or employes in charge of said locomotive and train did neglect to cause said bell to be rung as above stated; and also further neglected to cause said whistle to be sounded at least eighty rods before reaching said crossing; and did neglect to cause said whistle to be sounded at intervals until said train reached said crossing; and if the jury further find that the killing of plaintiff's mule was caused by such negligence, they should find for the plaintiff.

2. That if the jury believe from the evidence, that by the negligence or carelessness of the agents or employes of defendant in the operation of the locomotive engine and cars of the defendant, the plaintiff's mule was run against and killed, then they will find for the plaintiff.

3. That, if the jury find for plaintiff, they will assess his damages at the sum of $175, the defendant admitting that to be the value of the mule.

To the giving of which instructions defendant excepted.

The court gave the following instructions at the request of defendant:

2. Before plaintiff can recover in this action, he must prove to the satisfaction of the jury that the injury complained of was caused by the negligence and carelessness of defendant's employes in charge of the train.

3. The court instructs the jury that unless they believe from the evidence that there was an actual collision between defendant's engine or cars and plaintiff's mule they must find for defendant.

4. The burden of proving the facts in the instructions numbered two and three is upon the plaintiff, and if he has failed to prove either of said facts to the satisfaction of the jury they must find for the defendant.

The court refused the following instruction asked for by defendant:

The court instructs the jury that under the law and evidence in this case the plaintiff cannot recover.

To the action of the court in refusing said instruction defendant excepted.

On behalf of defendant it is contended that the first instruction, given at plaintiff's instance, is erroneous, for that it requires the defendant to give both statutory signals in order to escape liability. This view of the instruction is incorrect. In its first clause it plainly tells the jury that it was the duty of the defendant to give one or the other of the two statutory signals, and its latter clause tells them, that if defendant neglected to ring the bell, and, also, neglected to sound the whistle, that this failure would render defendant liable, etc. If the latter portion of the instruction were in the alternative, telling them that if the defendant "failed to sound a whistle, or failed to ring a bell" then it would be similar to the one given in *Turner's case*, 78 Mo. 578, and obnoxious to the same objection. An instruction such as that would have based liability on the failure to give either signal, while the instruction in controversy, only bases liability on the entire failure to ring the bell, and the entire failure to sound the whistle. In a word, failure to ring the bell, and failure to sound the whistle must have concurred in order to have cast liability on the defendant, nothing short of such entire failure in both these particulars, would have accomplished this, and so, in substance and effect, the instruction reads. Viewed in this light it is not justly subject to the criticism made upon it.

It is claimed that the evidence is wholly insufficient to support the verdict. It is true that there was no direct evidence to establish a collision between the train and the mule, and there was direct evidence that there was no such collision. In the absence of any evidence on the point of collision, of course, there could be no recovery. *Lafferty v. Railroad Co.*, 44 Mo. 291; *Hughes v. Railroad Co.*, 66

Mo. 325; *Seibert v. Railroad Co.*, 72 Mo. 565. With the mere sufficiency of the evidence this court has no concern. By the uncontradicted testimony of one witness there was snow on the ground, and by the uncontradicted testimony of two witnesses, there were no tracks between the railroad track and the willow tree on the north side of which the mule lay dead. If these statements of these two witnesses were true, and of their credibility the jury were to judge, it was impossible that the mule crossed the track unassisted by the train, unless the jury were prepared to believe that the mule standing on the railroad track was capable of clearing a distance of twenty feet at a single jump, striking against the south side of the willow tree with sufficient force to kill itself, and yet be found on the north side of the tree with no marks of injury or violence on the mule, except a small place on the left hind leg near the hoof, and no marks or abrasions, so far as testified to, on the tree.

Besides, the theory of the plaintiff, that it was the train that killed the mule, is supported by the testimony of the engineer that if the train had struck the mule it would have been thrown forward in the direction the train was moving. If we take it for granted, that the mule was about the center of the highway at the time the train going eastward came on (for the mule was found on the east line of the highway) and if we assume that the mule attempted to cross the railroad track in the middle of the highway, and that the highway was the usual width, forty feet, and that the mule jumped to the east line of the highway, and twenty feet north of the railroad track, this jump would have been considerably over twenty feet; a jump of such dimensions as might well be calculated to excite disbelief, even in the minds of those familiar with the saltant attributes of a mule. All these matters were, doubtless, considered by the jury, and it cannot, therefore, be said that their verdict on the point of collision, was without anything on which to base it.

Nor was the verdict without evidence in its support,

in other particulars.   There was evidence tending to show
a failure to comply with the statute as to signals, and that
the servants of defendant were guilty of negligence.   It
was in evidence that the crossing could have been seen 130
yards to the westward, and yet the engineer does not say
how far he was from the mule when he saw it, and the
fireman did not see the mule until it was across the track.
In approaching a public crossing it is the duty of those
who handle such dangerous machinery as a railroad train
to be on the lookout, as well as to give the statutory sig-
nals.   We have held it obligatory on persons approaching a
public crossing to look and listen, lest they be injured by
the cars, and certainly it must be obligatory on those en-
gaged in managing such deadly instrumentalities; it must
be the reciprocal duty of such persons to be equally on the
alert, when approaching a locality of that description.   For
this reason the second instruction for plaintiff was properly
given.

Therefore, judgment affirmed.   All concur